UNITED STATES OF AMERICA
ex rel. Paul G. KING

v.

ALCON LABORATORIES, INC., et al.

No. Civ.A.4:01CV469–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 4, 2005.

---

Kirby C. King, Law Office of Kirby C. King, Rockdale, TX, for Plaintiff.

Lars L. Berg, Kelly Hart & Hallman, Fort Worth, TX, Ethan M. Posner, Fernando Campoamor-Sanchez, Covington & Burling—Washington, Washington, DC, James P. Karen, Jones Day Reavis & Pogue, Dallas, TX, Barry E. Fields, Steven J. Harper, Kirkland & Ellis—Chicago, Chicago, IL, Robert R. Gasaway, Kirkland & Ellis—Washington, Washington, DC, Brian Edward Robison, Vinson & Elkins Trammel, Joe Bill Harrison, Gardere Wynne Sewell, Dallas, TX, Michael K. Fee, Ropes & Gray—Boston, Boston, MA, Gregory M. Luce, Jones Day—Washington, Joseph R. Palmore, Paul E. Kalb, Sidley Austin Brown & Wood—Washington, Washington, DC, Larri A. Short, Ronald H. Clark, Arent Fox Kintner Plotkin & Kahn, Washington, DC, Elizabeth F. Harris, Stephen J. Immelt, Hogan & Hartson—Baltimore, Baltimore, MD, Jennifer Jackson Spencer, Locke Liddell & Sapp, Dallas, TX, Cheryl Mitchell, Robert J. Miller, Reed Smith—New York, New York, NY, Devon H. Decker, Preston & Cowan, Houston, TX, Andrew L. Hurst, Kathleen H. Mcguan, Reed Smith—Washington, Washington, DC, Kenneth Edwin Carroll, Carrington Coleman Sloman & Blumenthal, Dallas, TX, Adam M. Schachter, Jay B. Shapiro, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, FL, Andrew A. Schau, Michael E. Campion, William F. Cavanaugh, Jr., Patterson Belknap Webb & Tyler, New York, NY, Lisa C. Dykstra, Michael J. Holston, Drinker Biddle & Reath—Philadelphia, Philadelphia, PA, Earl Bowen Austin, Baker Botts, Dallas, TX, John C. Dodds, Jason E. Baranski, Jennifer Jordan, Morgan Lewis & Bockius—Philadelphia, Philadelphia, PA, Gary D. Elliston, Dehay & Elliston, Dallas, TX, Thomas H. Lee, Ii, Dechert Price & Rhoads—Philadelphia, Philadelphia, PA for Defendants.

## *ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT*

MEANS, District Judge.

Pending before the Court is the defendants' Consolidated Motion To Dismiss the Second Amended Complaint, filed April 12, 2004. Having carefully considered the motion, response, and reply, the Court concludes that the motion should be GRANTED.

On June 6, 2001, Paul King filed his original complaint, alleging that each defendant had: (1) violated the False Claims Act

("FCA"); [1] (2) conspired to violate the FCA; and (3) were unjustly enriched by their actions. After investigating King's allegations, the United States Department of Justice ("DOJ"), on August 5, 2002, declined to intervene in the law suit. Thereafter, on January 14, 2003, King filed an amended complaint. After reviewing this complaint, the DOJ again declined to intervene stating, in part, that "because the allegations and claims in the Amended Complaint are substantially identical to those in the original complaint," further investigation was not warranted. *See* Second Notice of Election to Decline Intervention (Feb. 21, 2003) at 2.

On July 23, 2003, the defendants filed a motion to dismiss King's Amended Complaint. In response, King moved for leave to amend his complaint for a second time. On February 24, 2004, the Court granted King's motion and denied the defendants' motion to dismiss as moot. On February 24, King filed his second amended complaint.

 In their motion to dismiss, the defendants argue that the plaintiff's claim against them should be dismissed because, *inter alia*, King's complaint fails to comply with Federal Rule of Civil Procedure ("FRCP") 9(b). As to this argument, FRCP 9(b) states, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b) (2004) (emphasis added); *see also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 384 (5th Cir.2003) (stating that the requirements of FRCP 9(b) apply to claims under the FCA).[2] To comply with FRCP 9(b), a plaintiff must "allege the particulars

of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby, otherwise referred to as the who, what, when, where, and how of the alleged fraud." *Willard*, 336 F.3d at 384 (internal citations and quotations omitted).[3] "[I]n cases in which the mechanism or basis of the fraud is not otherwise apparent from the face of the complaint, the plaintiff must explain how the fraud worked." *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 616 (S.D.Tex.2001).

 However, in cases where the plaintiff is alleging that the fraud occurred over a multi-year period, the plaintiff is not required to allege all facts supporting each and every instance when each defendant engaged in fraud. *See United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir.2001). In addition, when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge or control or where fraud occurred over an extended period of time and consists of numerous acts, the specificity requirements of Rule 9(b) are applied less stringently. *See, e.g., United States ex rel. Thompson v. Columbia Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997). "Although we have held that fraud may be pleaded on information and belief under such circumstances, we have also warned that this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.'" *Willard*, 336 F.3d at 385 (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 n. 67 (5th Cir.2002)). "In addition, even where allega-

---

**1.** In *Wercinski v. Int'l Business Machines Corp.*, 982 F.Supp. 449, 455 (S.D.Tex.1997), the United States District Court for the Southern District of Texas, in summarizing the FCA, stated:

The FCA, which prohibits the submission of false or fraudulent claims to the government for payment, was enacted in 1863 in an effort to deter profiteering by Union Army Suppliers. The FCA, also known as the "federal whistleblower statute," specifically authorized suits, referred to as qui tam actions, brought by private citizens or "relators" on behalf of the Government to "aid in the effort to root out fraud against the government."

*Id.* (citations omitted).

**2.** "Rule 9(b) has four purposes: to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation." *United States ex rel. Wilkins v. N. Am. Constr. Corp.*, 173 F.Supp.2d 601, 614 (S.D.Tex.2001).

**3.** "Malice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

tions are based on information and belief, the complaint must set forth a factual basis for such belief." *Willard,* 336 F.3d at 385.

In his second amended complaint, King claims that the defendants violated sections 3729(a)(1) and (a)(2)[4] of the FCA. Specifically, King alleges that "during the period from on or before January 1, 1998 to the present, each Defendant has knowingly and intentionally chosen to operate in a manner that does not comply with" the Food and Drug Administration ("FDA")'s Current Good Manufacturing Practices ("CGMP"). King further alleges:

[E]ach Defendant has knowingly and intentionally sold drugs to the government by the United States of America that are by definition adulterated and that by law cannot be legally sold and the Government of the United Sates of America has paid

for these adulterated drugs that the Defendants sold it. Each Defendant has knowingly billed the government for adulterated drugs when the very act of offering them for sale certifies that the same have been manufactured in compliance with the law. The Government of the United States of America would not have purchased and paid for these adulterated drugs if it had known that each Defendant was violating the Food, Drug, Cosmetic Act (FDC Act), U.S.C. § 331 and 21 C.F.R. § 210 and 211.

(King's Second Am. Compl. at 6–7.) In support of his allegations, King refers to each defendant separately and alleges that each defendant had certain, specific drugs that were recalled.[5] Then King alleges, in essence, that the recalled drugs are evidence

4. These sections state:

Any person who ... (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; ... is liable to the United States Government for a civil penalty ...

31 U.S.C. §§ 3729(a)(1) & (a)(2).

5. For example, as to defendant Alcon Laboratories, Inc., King states:

16. Beginning on or about January 1, 1999 and continuing to the present, Defendant Alcon Laboratories, Inc. ("ALCON"), engaged in the manufacture, distribution and sale of adulterated pharmaceutical drug products, including, but not limited to, ALCON lots 57984P and 58005P of Prednisolone Acetate Ophthalmic Suspension, USP, Sterile, 1%, packaged in 10–ml units (recalled by ALCON on June 3, 1999 because of product non-uniformity that ALCON reported as "loose clumping (agglomeration) of the active ingredient" as per Supplement Statement of Evidence, Appendix "A").

17. Defendant ALCON was and is knowingly, deliberately and willfully engaging in the ongoing manufacturing, offering for sale of, and sale of batches of said drugs to United States Governmental agencies even though said drugs were and are adulterated as the term is: a) defined in the FDC Act and b) reiterated in the legally binding regulations set forth in 21 C.F.R. 210 and 21 C.F.R. 211.

18. Under the FDC Act, 21 U.S.C. 331, the sale of adulterated drugs is prohibited. Under

the FDC Act, the offering a drug for sale is a representation and certification that the drug meets the current good manufacturing practices required by 21 C.F.R. 210 and 21 C.F.R. 211. By selling these and other adulterated drugs to the United States Government and by billing the government for these substandard products, the Defendant ALCON has violated the False Claims Act.

19. In that regard, based on Relator King's information and belief, contrary to the requirements of the current good manufacturing practice regulations as set forth in 21 C.F.R. 210 and 21 C.F.R. 211, Defendant ALCON then failed and continues to fail to:

a. Take and test shipment-*representative,* as the term *representative* is defined in 21 C.F.R. 210.3(b)(21), samples of each lot of each of the components ALCON used and uses in the manufacture of lots of Prednisolone Acetate Ophthalmic Suspension, USP, Sterile, 1% and the other drug and related products that it manufactures and offers for sale (required by 21 C.F.R. 211.84).

b. Take and retain shipment-*representative* samples of each lot of each active ingredient that ALCON uses in the manufacture of pharmaceutical products, including, but not limited to Prednisolone Acetate (as required by 21 C.F.R. 211.170(a)).

c. Determine the "as is" PURITY, not Assay, of each discrete chemical component, including, but not limited to, each active ingredient (Prednisolone Acetate in the example cited) as well as, where appropriate, the other components used in drug product manufacture (required by 21 C.F.R. 211.84(d)(2)).

....

(King's Second Am. Compl. at 8–9 (emphasis in original).)

that each defendant has not complied with certain CGMP regulations.

■ After reviewing the case law and King's Second Amended Complaint, the Court concludes that his complaint must be dismissed because it fails to meet the requirements of FRCP 9(b). To begin with, King fails in his complaint to specifically identify any fraudulent claims for payment that were submitted by the defendants to the government. Although King does identify various Federal Supply Schedule contracts that exist between the defendants and the government, each of which spans multiple years and covers multiple drugs, King fails to identify any actual false claim submitted to the government pursuant to one of these contracts. *See, e.g., United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1311 (11th Cir.2002) (stating that evidence of an actual false claim is the *"sine qua non* of a False Claims Act violation"). The United States Court of Appeals for the Fifth Circuit has routinely held that a relator cannot merely allege fraudulent "schemes," as King does here, but must also allege, with particularity, the false claims actually submitted. *See, e.g. United States ex rel. Russell v. Epic Healthcare Mgmt. Grp.,* 193 F.3d 304, 308 (5th Cir.1999); *Thompson,* 125 F.3d at 903 (affirming the dismissal of the plaintiff's complaint under 9(b) because the realtor did not identify any specific claims that were fraudulent). *See also Wilkins,* 173 F.Supp.2d at 641 (complaint failed under Rule 9(b) because the plaintiff did not indicate what defendants represented to the government); *United States ex rel. Stewart v. The Louisiana Clinic,* 2002 WL 1066745, at *4 (E.D.La. May 28, 2002) ("[W]ithout alleging a single false claim by any one of the[ ] defendants ... [the] allegations fail to meet even a bare-bones Rule 9(b) test") (internal quotations omitted).

In addition, King does not identify a single person involved in the alleged fraud. *See, e.g., Uni*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923–24 (7th Cir.1992) (dismissing claim because plaintiff "[did] not even hint at the identity of those who made the misrepresentations, the time the misrepresentations were made, or the places at which the mis-

representations were made"). Furthermore, he fails to identify a single specific date on which a false claim was made and, instead, claims that the fraudulent activity occurred on or before January 1, 1998, to present. *See, e.g., United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 342 F.3d 634, 643 (6th Cir.2003) (dismissing under Rule 9(b) because, *inter alia,* "the amended complaint failed to set forth dates as to the various FCA violations"). Finally, King has failed to allege any facts as to exactly how the fraud was committed. Instead, King states that the defendants "operate[d] in a manner that d[id] not comply" with certain laws and regulations. (King's Second Am. Compl. at 6). King then proceeds, without any factual support, to list the alleged regulations that each defendant failed to comply with. However such allegations are too vague and meaningless to provide the defendants with any useful information in defending against King's claims.

Although, as stated above, the rules for pleading under FRCP 9(b) are somewhat relaxed in this Circuit when the information is in the control of the defendants or where the fraud occurred over an extended period of time, King must meet the minimum requirements of FRCP 9(b) to proceed with his lawsuit and cannot use the discovery process to bypass FRCP 9(b)'s pleading requirements. *See Russell,* 193 F.3d at 309 ("A special relaxing of Rule 9(b) is a qui tam plaintiff's ticket to the discovery process that the statute itself does not contemplate"); *Williams. v. WMX Technologies, Inc.,* 112 F.3d 175, 178 (5th Cir.1997) ("Directly put, the who, what, when and where must be laid out before access to the discovery process is granted") (emphasis in original). Because King has failed to meet such minimum requirements, his lawsuit must be dismissed.

■ In his response, King requests that, if the Court determines that his Second Amended Complaint does not comply with FRCP 9(b), that he be granted leave to bring it into compliance. The Court, however, has discretion to deny leave to amend if it determines that the pleading could not possibly be cured by the allegation of other facts. *See, e.g.,* FED. R. CIV. P. 15(a). In this case, King

has already amended his complaint on two occasions. On the second occasion, he amended in response to a prior motion to dismiss filed by the defendants that spelled out the same defects as asserted in the present motion to dismiss. It is clear, then, that King has had plenty of opportunity to plead any facts of which he has knowledge in support of a claim against the defendants. Because King has repeatedly failed to meet the basic requirements of FRCP 9(b), the Court concludes that it would be futile to allow him another opportunity to amend. *See Willard*, 336 F.3d at 387 (stating that "leave to amend properly may be denied when the party seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed and when amendment would be futile").

Based on the foregoing, it is ORDERED that the defendants' Consolidated Motion To Dismiss the Second Amended Complaint [doc. # 129–1] is GRANTED.